Thank you and thank you for bringing this illustrious group of students. We'll hear from Ms. Shellman first. May it please the court, my name is Faith Shellman and I, alongside my co-counsel Melissa Stuckey, represent the plaintiff, Benjamin Carter. Now you know, you're about, I don't know how many feet away, but why don't you speak up as if you're speaking across the room. The mic will help you, but recognize that we old folks need to hear you. I'm the old folk. Thank you, Your Honor. The threshold issue in this case is whether Mr. Carter exhausted all available remedies under the Prison Litigation Reform Act for his First and Eighth Amendment claims against defendants. Carter contends either that any remedies not exhausted by him were unavailable or that federal rule of civil procedure 15 applies. Turning to the argument, as the court observed in Gowan v. Winfield just last year, an administrative remedy is considered unavailable under three circumstances. I'm sorry, I hate to interrupt, but I do want to ask a question about your availability argument. It looks like the district court didn't address that, but I assume it is your position that it was properly raised before the district court? Correct, Your Honor. Yes, the district court failed to address Carter's availability argument, although Carter did raise that in his opposition to defendants' motion for summary judgment on JA 251. As a general rule, we don't address issues in the first instance, and I do have some concern about us taking on the availability argument, particularly the dead-end exception is very kind of fact-specific. There hasn't been any discovery in this case we've held before that the availability question can require discovery. Is there a reason why we would go first on that and address that on appeal? Yes, Your Honor. The court can address availability, particularly dead-end and thwarting, under Gowan. As in that case, the court ended up remanding to permit the case to go on to the discovery phase and allow for the facts to be developed. That is, at the very least, what Carter would ask in this case. The court instructed in Gowan that a grievance process has reached a dead end when there is no way to appeal an adverse determination by prison officials. Like the inmate in Gowan, Carter submitted a litany of grievances concerning his solitary confinement, directing the court's attention to Carter's documentation of his First and Eighth Amendment grievances on 123-28 and 231-33 of the Joint Appendix, respectively. These two grievances were rejected at intake, and those rejections were upheld on appeal to the regional ombudsman. Now, VDOC's policy explicitly indicates on JA-226 that rejections of this kind are final. There is no further review or appeal for them. That's rejection based on noncompliance with the procedural rule, right? In other words, on the substance, that doesn't affect the substance on whether he has gone through the steps that are available. If it's rejected on a technical basis, he can redo it and then still has to go through the process. Am I correct on understanding that? Yes, Your Honor, you are, and that is why the record is replete with Carter's attempts to utilize the grievance process. He filed grievance after grievance after grievance, and each time, his First and Eighth Amendment grievances were rejected at intake for dubious reasons. For example, the grievance noted on JA-233 was rejected for failing to specify a singular incident date. Even though Carter complained of ongoing condom, his continual confinement in unconstitutional housing conditions, and even despite the fact that Carter had submitted that same currently ongoing in the date field on several of his grievances in the past, and none of those had been rejected for failing to specify an incident date, under these circumstances, Judge Niemeyer, the requirement would be for Carter to file a grievance every single day in a dating, the grievance procedure, with a daily grievance of his ongoing condom, or the alternative would be that he artificially limit or constrain his grievances to just one day. In either approach, it's just a catch-22. Importantly, these circumstances are also indicative of thwarting undergown. In light of the statements made by Defendant Branch on JA-113, Carter repeatedly pled to Defendants Branch, McCoy, and Cabell, and in response, Defendant Branch told Carter, stop writing me up. You're really not going to get reentry now. McCoy and Cabell weren't having that, especially after you wrote them up. These statements add significant context, Your Honors. They reveal coordinated efforts amongst the defendants to preclude Carter from meaningfully using the grievance process. Because BDOC's grievance procedure has this dead end, it has no way to appeal an ombudsman intake rejection, as Your Honors stated, that can be rejected for a technicality. It is quite ripe for abuse by prison officials. Defendant Branch's statements indicate that the procedure was, in fact, so abused by himself, McCoy, and Cabell in retaliation against Carter. Before you run out of time, can I ask you to put to one side availability and talk to me about the effect of the amended complaint that was filed in January 2023 and what you think that added to the exhaustion question? Yes, Your Honor. Even if the court decides that exhaustion was not complete as of the original complaint, Carter's First Amendment claim can still proceed. As in Franks v. Ross in 2002, the court instructed that the filing of a supplemental pleading is an appropriate mechanism for curing numerous possible defects in a complaint. Indeed, the rule... I'm sorry, I just want to make sure. But your argument about the amended complaint is limited to the First Amendment claim, the one that was raised for the first time in the amended complaint? Yes, Your Honor. You're not arguing that the amended complaint would have cured any... Assuming for a minute, I understand this is not your position, but had there been an exhaustion defect in the original complaint as to the Eighth Amendment claim, the amended complaint would not cure that. Or at least you are not arguing that the amended complaint would cure that. Yes, Your Honor. Okay. We are not arguing that. However, there is a circuit split on the issue, and if the court would be interested, we'd be happy to supplement it. I just wanted to know. It's not in your brief, and so I assume when it comes to the amended complaint, we're only looking at the First Amendment claim. Yes. Okay, thank you. Today, this court can join at least four other circuits in applying Rule 15 supplementation to... Let me ask you just before you get to the effect of Rule 15. The PLRA requires exhaustion before an action is filed, not before a complaint is made or an amended complaint is made. And the First Amendment retaliation claim was made in August before the action was commenced. But was not exhausted. And it's a good question whether it was ever exhausted, actually, but we can get to that later. But the question is whether we focus on complaints and amended complaints and pleadings and summary judgment motions or motions on the pleadings, or we focus on the action. And if I understand the statute, it says that you have to exhaust before commencing an action. And I think the Supreme Court in Ross said the same thing before bringing suit, not before you amend later. And it may be technical, but it may not be so technical because of the public policy interest in this. Yes, Your Honor. I'm basically raising a question of whether focusing on complaints and amended complaints and pleadings that pick up additional claims complies with the PLRA. Yes, Your Honor. I see that I'm out of time. May I answer your question and conclude? What's your position on that? Yes. So I have two points in response to your question. I will take the first part, particularly the language of the statute that no action shall be brought. The Supreme Court instructed in Jones v. Bach in 2007 that that language, no action shall be brought, is boilerplate, particularly because it appears in several exhaustion statutes, and none of those statutes render exhaustion a jurisdictional bar as a result. I'm not suggesting there's a jurisdictional bar. It's a condition for bringing an action, an action, not filing an amended complaint. And the action was commenced, what, in September, and at that point you had a retaliation claim, but it wasn't asserted, and it wasn't exhausted, and you had the other claims, which the district court concluded were not exhausted. And so that's why the court threw them out. Now, somehow you're trying to use Rule 15 with the amended complaint in January to satisfy the commencing of an action. It sounds technical, but there are reasons for it. Now, if the conduct came after the filing of the complaint, we might have another issue there. We might be able to construe a new complaint as a new claim based on facts that could not have been alleged. But here the action was commenced, the conduct had taken place, and it didn't allege anything about it, and there was also no exhaustion alleged or found with respect to either the First Amendment retaliation claim or the Eighth Amendment conditions claim. So I'm not sure you get a lot of comfort from trying to articulate the relation back and all the other principles under Rule 15 that might arguably apply. Yes, Your Honor. Congress has never made any indication that it intended PLRA exhaustion to supplant or modify Rule 15. To the contrary, it said you have to exhaust before you start an action. They used the word action, right? Yes, Your Honor, but they used that same language in several other exhaustion statutes, and it does not change that. Well, I'm talking about this statute, and I'm talking about the Supreme Court's statement in Ross that there has to be exhaustion before you bring suit is the word they said. Yes, Your Honor. In analyzing that exact same text in 2007, the Supreme Court said it is boilerplate. It does not necessitate a timing requirement. Do you think boilerplate means we shouldn't give it the meaning? No, Your Honor. That is not Carter's contention. Instead, Carter contends that the PLRA does not supplant or modify the federal rules of civil procedure. When Congress, as the Supreme Court instructed in Jones, when Congress intended to depart from the procedural rules, it expressly indicated as much. There are numerous instances of this. We see it in pleading. The government does not have to immediately respond with an answer. They do not have to answer to every single allocation, admitting or denying in a complaint. I'm just wondering why we put the burden on the statute to modify the pleading rules when it doesn't even get into the pleading rules. Basically, it treats a whole action as a single event, which has all its pleadings and motions within the action. But I don't see any need in the context of what was being accomplished, why they would even think to address the pleadings. What they basically were addressing is before you come to a federal court to get relief, you have to exhaust your remedies that you have in prison. Your Honor, we are not putting the burden on the statute. The burden here is on, as you said, the rulemaking process. Establishing more onerous pleading standards should be done through established rulemaking process, not on a case-by-case basis. And that is why Rule 15 would still apply in this case, just as it does in every other case. Therefore, Carter contends that any remedies not exhausted were unavailable, and Rule 15 applies to his case. What's the evidence that he exhausted his retaliation claim? The evidence that Carter exhausted his retaliation claim is— I thought his claim was rejected on a procedural ground and not on substantive grounds. Your Honor, the district court found that Carter had exhausted all available remedies for the First Amendment retaliation claim— I'm asking what the record shows. —as of October 25, 2022, and that's noted on JA 313. I understand what the court said, but I'm asking you, what is the evidence of exhaustion? The evidence is that defendants do not dispute it. They did not file any affidavits disputing that exhaustion was complete as of that date. Well, tell me factually what happened in the prison context. He made that claim, and then at some point after he made the claim, it was rejected, right? For procedural reasons. Yes, Your Honor, and then in October— And did he appeal that rejection? Yes, Your Honor. And that was denied, right? Yes. And that's the end of it? No, Your Honor, he sought level two appeal through a regional administrator. Of the rejection? Yes, and that— There's only one—on the rejection for procedural grounds, there's only one level of review, but he never substantively appealed the grievance, corrected it so as to get it on the merits. Okay, I understand your position. I'm not sure that satisfies the exhaustion requirement to appeal the procedural rejection aspect. Your Honor, the defense did say that at that point, the exhaustion process had ran its course. For that reason, Carter contends that exhaustion was complete and summary judgment wasn't proper. Actually, we've let you go all along here over time. I hadn't been watching the clock, but, you know, that means you don't get a ticket. But why don't we pick up on rebuttal? Thank you, Your Honor. Thanks very much. All right, I think we'll hear from Mr. Stuckey. Is that the next? May it please the Court. My name is Melissa Stuckey, and I also represent the plaintiff, Mr. Benjamin Carter. Turning to the merits, Mr. Carter sufficiently pled a First Amendment retaliation, an Eighth Amendment deliberate indifference claim. The case for First Amendment retaliation is simple. Mr. Carter repeatedly notified defendants that he was improperly placed in the restrictive housing unit. In both written and oral submissions, Mr. Carter requested that he be placed in the step-down program per VDOC policy as a prisoner less than two years from his release date and as a mentally ill prisoner. Despite these requests, and because of these requests, defendants McCoy and Cabell affirmatively blocked Mr. Carter's transfer into step-down and kept him confined in unconstitutional solitary conditions. Mr. Carter sufficiently pled facts to meet all three elements of a retaliation claim. First, defendants do not dispute that Mr. Carter engaged in protected First Amendment activity through filing grievances and making requests to enter step-down. Second, the defendants engaged in an adverse action. Wardens McCoy and Cabell, people in charge of making housing decisions, affirmatively blocked Mr. Carter's transfer into step-down and therefore kept him in these unconstitutional conditions. This was in direct contravention to VDOC's own policy. As noted by Mr. Carter and then verified by the defendants on page 293 of the Joint Appendix, VDOC Operating Procedure Section 830A-H1 states that offenders two years prior to their release date will be diverted into the step-down program regardless of their placement in the program where they stand. Despite this clear language, defendants McCoy and Cabell did not place Mr. Carter in step-down, nor did they provide any reason why they did not. The District Court itself noted on page 323 of the Joint Appendix that the denial of access to reentry programming could deter a person of ordinary firmness from the exercise of First Amendment rights. And so as the District Court correctly recognized, this constitutes a sufficient adverse action for a First Amendment retaliation claim. And lastly, Mr. Carter sufficiently pled facts to show that there was causation between his protected First Amendment activity and the defendants' adverse action. Under this court's precedent in Constantine in 2005 and in Shaw v. Foreman in 2023, retaliatory motive is not necessary for a First Amendment retaliation claim. Instead, causation can be shown through showing temporal proximity. Counsel, I'm sort of confused. You have direct, at least as alleged, this case has direct evidence of retaliatory motive. They apparently told him, because you keep filing these grievances, we're not going to do this. Do you need circumstantial evidence on top of that at a motion-to-dismiss stage? Your Honor, yes. This was dismissed at a 12 v. 6. No, no, I'm saying why do you need anything more than the statement in this case? Your Honor, I apologize. You don't need it. The fact that defendant branch affirmatively told Mr. Carter that McCoy and Cabell weren't having his transfer because he was writing them up clearly shows, as Your Honor noted, a retaliatory motive. Maybe it happened, maybe it didn't, but we're on a motion to dismiss. At least as alleged, there is direct evidence of retaliatory motive. I'm just struggling to figure out why we need to go further on that point. Feel free to cover all your bases. Your Honor, we do not. Again, the defendants did not actually submit an affidavit denying that defendant branch ever made this statement. That alone does show that it's plausible on its face that Mr. Carter pled a First Amendment retaliation claim, but we just do have the temporal proximity as well as the knowledge of defendants McCoy and Cabell as wardens. That just goes to add additional evidence to show that the district court was erroneous in dismissing his First Amendment retaliation claim. Turning to the Eighth Amendment claim . . . Let me just ask you as a matter of curiosity. He's out now. He's been released, right? He has been released from Sussex, but he is still incarcerated. In connection with this sentence, or is it another crime? In connection with another crime. Oh, okay. Basically, his claim is for damages, right? Yes, it is. He pled compensatory and nominal damages. Okay. Yes. Turning to the Eighth Amendment argument, Mr. Carter also sufficiently pled that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. There are two elements for an Eighth Amendment claim. Mr. Carter . . . I'm sorry to interrupt. I guess sort of a similar question to what I asked your colleague. The district court in this case only reached the Eighth Amendment claim as to Director Clark, right? And the rest . . . Why would we reach that? Two questions. Should we reach the claim as to the other defendants in the first instance rather than remanding to the district court to do that first if we thought the claim was exhausted? And I guess also do you have an argument you want to make about Director Clark because that the district court did cover? Yes, Your Honor. To address Director Clark first, the district court initially dismissed Defendant Clark without any analysis. All it did was state the three rules, the three elements of a supervisor liability claim, and then did not engage with the facts at all before dismissing him. When Mr. Carter made a request for reconsideration as seen on pages 300 to 301 of the joint appendix, the district court's subsequent denial of the reconsideration required specific knowledge of Mr. Carter's circumstances, which is not an element or requirement for a supervisor liability claim. Rather, the district court should have just been looking at whether there was knowledge of risk to citizens like the plaintiff. And because of this court's holding in Porter, there was obviously knowledge by Defendant Clark especially of the unconstitutional conditions of RHO and the fact that his subordinates were putting people in these harmful conditions. And on that note, this court should address the Eighth Amendment because the district court did not address it at all and this court has intimate knowledge of the facts of Porter and is in the best position to apply the facts of Porter to this case. As seen on page 26 of the reply brief of Carter's reply brief, the conditions in this case are almost identical to the conditions that were present in Porter. And so because of that similarity, this court is in a substantially beneficial position to be able to apply the facts here. These conditions that this court noted were unconstitutional in Porter were especially harmful to Mr. Carter here. I don't know if it's useful to get into all this because I'm not sure it has been addressed in the first instance, but if I recall, the conditions in Carter, first of all were standard conditions for somebody on death row and so that everybody was subjected to them. That was number one. And number two, they had substantially changed those conditions as of the time of the litigation and we reviewed only the original conditions and the new conditions have not been subject to any Eighth Amendment review. But as I understand this case, Carter was not confined to solitary confinement as a matter of routine punishment. He was put there because of prison conduct which I think has been routinely accepted on a basis of what, I don't know what the details were on all of this, but it seems to me we need a lot more to know because I think putting somebody in solitary confinement for the inability to do this or that or his conduct in prison may be fully justified and it has been justified in case after case. So we would have to know a lot more I think to address that if we were to get to that. I just don't want us to go too far down that road at this point. Your Honor, I completely understand. I do want to point out that on page 106 of the joint appendix, Mr. Carter states that he was in the step-down program at Red Onion State Prison before his transfer to Sussex and then he was immediately placed in the restrictive housing unit with no reason given. And so it's not that the defendants have offered any reason why he was placed in the restrictive housing unit in terms of conduct or wrongful behavior. And further, while it is true that we don't know about all of the actions that occurred in this case, Mr. Carter did sufficiently state a plausible claim to get this case to go to discovery to be able to find out more about the conditions. The conditions that Mr. Carter alleged were the ones that were originally addressed in Porter, even though in Porter it did say that the inmates were subjected to different conditions then. And this case is particular to Mr. Carter in the fact that he had a myriad of mental health conditions such as PTSD and schizophrenia. And because of those conditions, he was especially susceptible to the harm of the prolonged confinement in RHO. And so for that reason, we ask this court to reverse the dismissal of Mr. Carter's first and eighth amendment claims. Thank you. Does that cover... Do I... Oh, we have to hear from you, Mr. O'Savin. I've exhausted the whole plaintiff's side, right? Okay. May it please the court. Tristan Chase O'Savio for the Commonwealth and the Department of Corrections Defendants. Your Honors, under the Prison Litigation Reform Act, no action shall be brought with respect to prison conditions by a prisoner confined in prison until such administrative remedies as are available are exhausted. Here, Your Honors, Mr. Carter failed to do exactly that. The district court's decision should be affirmed for four reasons. First, Mr. Carter filed his lawsuit on September 30th, 2022, but did not fully exhaust his administrative remedies related to his underlying claims until October 25th, 2022. Just to be clear, counsel, you're not disputing that he did, in fact, exhaust them in October? Yes, Your Honor, he did. And then the second reason why... May I ask you, does that include his retaliation claim? Yes, Your Honor, that would include his retaliation claim. How did he exhaust that? Well, I believe, based on the complaint, it is linked to this October 25th... the October 25th, 2022 exhaustion letter, the response letter, the deficiency letter, and that was based on the conditions of his housing status. I'm talking about the retaliation. How was that exhausted? Yeah, well, that's a good point, Your Honor. So, to a certain degree, I guess that... Well, I'm not making a point, I'm asking a question. In other words, the record seems to show that his retaliation claim was rejected for procedural matters, and you get one appeal on that, he took the appeal and was rejected, and then he tried to appeal further and it was rejected because he didn't get more appeals. But he never pursued the retaliation claim on the merits. That's correct, Your Honor. Is that correct? Is that what the record shows? Yeah, that is correct, Your Honor. So why do you concede it was exhausted? Well, we would argue that what was exhausted was the overall sort of claim regarding his housing status, and the statements that Branch had made are linked to that sort of overall conversation and the decision that was made in the JA-122, the exhaustion letter, October 25, 2022. So, I guess to a certain degree... I fully don't understand that at all. Yeah, I would say that... His complaint was two distinct areas. One were the prison conditions, which he complained about, and he complained about not getting into the step-down program, and he had complained also about retaliation. In August, he complained about that. Now, these are totally distinct things. You're saying there was a letter with respect... I remember that letter, but that didn't address retaliation, did it? That is correct, Your Honor. It did not address that point. And so the second reason why the district court's decision should be affirmed is because the federal rule of civil procedure, Rule 15, cannot cure an exhaustion defect when the amended complaint claims are based on the same underlying events as the unexhausted claims in the original complaint. And third, contrary to Mr. Carter's assertions, administrative remedies were fully available to him under Operating Procedure 866.1, remedies he successfully used on at least six separate occasions. And regardless, as Judge Harris pointed out, the availability issue wasn't addressed below, so is waived at this stage. And then fourth... No, I'm sorry. Why was it waived if it wasn't addressed? It looked to me like Mr. Carter raised it. It's, I think, the very first page of his Opposition to Summary Judgment cites Ross. But the district court for... I mean, it's a complicated case, but the district court just never got around to addressing it. But that doesn't mean it's waived. Normally, it means we would remand so the district court can address it. Yeah, that does make sense, Your Honor. Well, the position that I was taking was that because he didn't raise it below... So your argument is that he did not raise it below? Yeah. What do you do with the fact that it's on the first page of his Opposition to Summary Judgment? It's the citation to Ross. Well, yes. Sorry, Your Honor. Yes, he did raise it below, but the district court didn't address it specifically.  And then fourth, even if Mr. Carter exhausted his administrative remedies, which he did not, his complaint still fails because it contains no allegations that Cabella McCoy personally engaged in any conduct supporting his First and Eighth Amendment claims. So I want to make sure I first address the exhaustion defect issue and Mr. Carter's ability to cure under Rule 15. Here, no amendment can cure Mr. Carter's exhaustion defect. Harden v. Hunt illustrates this point. In Harden v. Hunt, this court held that federal rule of civil procedure, Rule 15, cannot cure an exhaustion defect by filing an amended complaint once exhaustion is complete when all claims in the amended complaint are based on the same underlying events as the then-unexhausted claims in the original complaint. And here, because all the claims in the January 30, 2023 amended complaint are based on the same underlying claims in the original then-unexhausted September... But there wasn't a retaliation claim in the original complaint, was there? I thought that's why your colleagues were sort of splitting. They think the amended complaint can only address the first... can only satisfy exhaustion with respect to the First Amendment retaliation claim because that claim pops up for the first time in the amended complaint. Sorry, could you repeat that? Yeah, sorry, I know. To me, it seems like Harden, our unpublished decision in Harden, is different because in this case, the retaliation claim shows up for the first time in the amended complaint. It was not in the original complaint. And given that the point of the PLRA is to make sure that prison officials can address a complaint before they have to litigate it, I mean, that seems like it happened here. They had a chance starting October 22 to address this retaliation claim because that's when it was exhausted. And he didn't seek to require the prison to litigate that claim until he filed his amended complaint later. Yeah, so the position the Commonwealth takes is that that retaliation claim, although it's different by its very nature from the original complaint, it's still based on the same underlying facts that gave rise to the original complaint, the September 30th, 2025, retaliation complaint. I mean, do the factual allegations, I may be misremembering this, do the factual allegations in the original complaint refer to the statement made that because you keep filing these complaints, I'm not going to transfer you? I thought we didn't hear anything about those factual allegations until the amended complaint, but I may be wrong about this. I believe that is correct, Your Honor. But to my knowledge, because it is linked back and intertwined with the underlying set of facts, it is based on the same underlying events of the original complaint, and therefore Rule 15, as in Hardin illustrates, should not be a method for cure for his exhaustion defect. So do you have, I mean, there are a bunch of circuits that have come out the other way, and some of them have adopted a broader rule than what Mr. Carter is seeking here. They've said, even if you raise it, even as to the Eighth Amendment claim here, you could cure that defect later in an amended complaint. And then some circuits have said, well, not the Eighth Amendment claim, but for a claim you raise for the first time in an amended complaint, it's sufficient if that is exhausted before you file the amended complaint. So do you, I mean, is there a way to distinguish all of that authority? Do you just want us to say we disagree with it? Absolutely. So a lot of these cases were mentioned in the reply brief of Mr. Carter, and they are distinguishable. So the reliance on Ramirez versus, Ramirez versus Collier, Rhodes versus Robinson, Cannon versus Washington, Sadozay versus Davis, and Garrett versus Wexford, it's misplaced, because those decisions permit a Rule 15 cure on exhaustion defect under circumstances not necessarily applicable here. For example, in Rhodes, Ramirez, and Cannon, the amended complaints asserted claims arising from an entirely different set of facts and events in time periods. In Maddox versus Edelman, the original complaint included at least one fully exhausted claim. And in Sadozay and Garrett, the plaintiff prisoners in those cases were no longer even prisoners by the time they had filed their amended complaints, and therefore no longer subject to the Prison Litigation Reform Act's exhaustion requirements at the time of the amendment. And so none of those circumstances are present here. Carter was currently serving his prison term as a prisoner, he was at the time serving his prison term, which is when he's out of those conditions, but he's still a prisoner, and is a prisoner who is therefore subject to the Prison Litigation Reform Act exhaustion requirements. And his amended complaints asserts the same claims based on the same underlying events that were asserted in the then-unexhausted September 30th, 2022 original complaint. And so, therefore, Rule 15 cannot function. There's an additional fact that might even add to that calculus, is that he had made his retaliation claim before he filed suit. He made his claim in August on retaliation, and that's when he attributed that language that since you filed so many complaints. But he did not include it in his complaint filed in September. He did include it for the first time in his complaint in January. But the question is, I suppose, is can you cure a lot of defects with an amended complaint when you didn't satisfy the exhaustion before you commenced the action? And I know I beat that horse already with a bunch of questions, but it troubles me that we're involved in so much discussion about Rule 15 and pleadings and correcting what was in the original complaint to what was in the later complaint. We're not even talking about complaints. We're talking about a requirement before you bring an action. And the exhaustion has to be completed before you bring the action. That's what the statute says. And we're down and dirty into this pleading, and I'm not even sure, you don't seem very convincing on this, but I'm not even sure as of January the First Amendment was exhausted. It seems to me under the prison procedures at the time, all he tried to do was appeal the rejection for procedural grounds and never pursued that further. And so I think that the Commonwealth still maintains the fact that the First Amendment retaliation claim, although it may not have been abundantly clear, is still based on the same underlying events that were being asserted and the facts that were being asserted in the September 30th, 2022 complaint. Can I ask you to address, I guess, the Jones decision that your colleague was talking about and the way the Supreme Court construed the word action there? Because I thought in that case that was the one about the complete exhaustion rule. And the argument was that, look, if you haven't exhausted any claims, then you did not exhaust before you filed your action. And action means the moment at which you commenced your suit, and so you have to dismiss the whole suit. And the Supreme Court said, no, we're not gonna read action literally here. And they read it basically to mean claim. Action means claim, and so you have to have exhausted the claim. And so those claims that were unexhausted are the ones that will be dismissed, but the ones that were exhausted will go forward. So they basically say we're gonna read it interchangeably with claim in that case. And that seems to resolve a lot of the concerns here, to me at least, about allowing a claim raised for the first time in an amended complaint to look to the time of the filing of the amendment when we're trying to figure out whether something was exhausted. I'm almost certain I didn't say that in an elegant way, but do you see what I mean? Yes, Your Honor. And I think how you look at that is you just look at the plain language of the Prison Litigation Reform Act, and it says in plain language that exhaustion must be completed before the time of raising the actual complaint. And they list reasons why, in Jones especially, why that process is important. I think as an initial matter, it's important that we follow these procedures so that future cases, the exhaustion of administrative remedies process isn't obviated. And then second, as in Jones versus Bob, what they say is that PLRA exhaustion is necessary to allow prisons to address complaints about the programs it administers before being subjected to suit, reducing litigation. But that happened here. I mean, he, on your own account, Mr. Carter exhausted his retaliation claim before he subjected the prison to suit over that claim. So what's the problem? Yeah, so there's two other reasons as well. It's reducing litigation to the extent complaints are satisfactory will resolve, and improving litigation that does occur by leading to the preparation of a useful record. But that, I mean, my understanding was that the PLRA was also, I think sort of encompassed by those last two factors, sort of judicial economy and efficiency. And I don't really see how that is advanced here if someone like Mr. Carter, instead of simply amending his existing complaint and having one consolidated case, has to file a whole separate action based on his retaliation claim. Now you have two cases. How does that help anything? Well, your question does make sense. And I do think that the PLRA is, as you said, designed for judicial economy. And I think that it's also designed to allow the litigant, the prison litigant, to put their best foot forward and make sure that they're following their claims. And I think had that process been actually fully exhausted from Mr. Carter, then perhaps some things could have been resolved. For example, in JA-122, which is the October 25th exhaustion letter, it lists two individuals who are not named defendants in this case. It's first Sims, who is the facility and institutional programs manager, and Green, the chief of housing and programs, assistant warden. These are individuals who were actually intimately involved with the actual actions and dispute in terms of the lack of alteration of the housing status of Mr. Carter and also the decision-making and the review process. These were actions that were done by Sims and Green, not Cabell, McCoy, or Branch. So had Mr. Carter actually gone through this administrative process, judicial economy would have been achieved. He would have been able to put his best foot forward and actually asserting claims against folks who were actually intimately involved with the factual assertions he's making with respect to his First and Eighth Amendment claims. So, yeah, that's the position that we take in terms of the Prison Litigation Reform Act's purpose. If I may, I would like to transition to the availability argument regarding the definitions of opaqueness and dead end. I think either way you slice it, the facts make it clear that the process was available to Mr. Carter. This was not a dead end because Mr. Carter actually successfully completed the administrative process, as evidenced in the October 25th, 2022 letter, JA-122, and the standard for opaqueness is whether an administrative process is capable of use by an objective prisoner. But here, Carter used the administrative process on multiple occasions, on at least six separate occasions. And so Carter failed to plausibly allege that the system was incapable of use, and the record actually indicates and makes it clear that there's no genuine issue of material fact that Cabell, McCoy, or Branch were involved in these factual assertions. In fact, Sims and Green were involved in these factual allegations. Any further? I don't have anything further. If you have any further questions. I have a reasonably quick question. Just on the screen dismissal of Director Clark on the Eighth Amendment claim, the conditions of confinement claim, so the only reason the district court gave for that was your colleague discussed this already, that there were no allegations that he knew about the plaintiff's circumstances specifically. Are you defending that as sort of correct, or would you have us affirm that on a different ground? Yeah, so it's our position that Mr. Clark was not involved in that process and didn't have any knowledge of the process. But that's not the standard, right, that he has to know about the plaintiff's specific condition. I think it's just what he would have to know or have reason to know is that his subordinates are engaged in some kind of unconstitutional conduct that would subject prisoners generally, people in a situation like the plaintiff, to an unconstitutional injury. But I think we've been clear about this. You don't have to know that Mr. Carter specifically is having this problem. I'm concerned. It looks to me like the district court gave one reason and one reason only for dismissing Director Clark and that that reason was incorrect. And I'm just trying to figure out whether you would have us affirm on a different ground or just remand and let the district court look at this. I don't know what to do about that. I would say that we would affirm on the district court's decision with respect to that. But I'm happy to address any... So for those reasons, the Commonwealth asked this court to affirm the lower court's decision below. Thank you. All right, thank you. All right, Ms. Shellman, we'll hear from you. May it please the court, we have just a few, three points on rebuttal. First, my friend on the other side went through pains to try to distinguish the wealth of authority on the First Amendment Rule 15 argument. But all of these authorities, as listed on page 18 of our brief, actually are more beneficial to Carter's case than against it. First, the most relevant would be Sadaz Ivey Davis. And in that case, the Ninth Circuit firmly held that the PLRA does not supplant or modify Rule 15. My friend on the other side says that Sadaz Ivey is distinguishable because the case involved a prisoner who was no longer a prisoner. But in that case, the court actually relied on precedent to that effect and said, irrespective of pleading tiles, defects in the original complaint, or even an inmate's status as a prisoner, it does not matter. The supplemental fact, whether it was his status as a prisoner or his exhaustion of a claim, still rendered amendment and supplementation proper under Rule 15. Well, I think that your friend on the other side's main argument is actually that the original complaint included the allegations or the allegations, the First Amendment allegations were sufficiently intertwined with what was alleged in the initial complaint with the First Amendment claim. And when I look at the initial complaint, I actually don't see anything in it about the First Amendment allegations. It is true that the internal prison complaint about the First Amendment allegations took place prior to the filing of the initial complaint, but I don't see anything in the initial complaint that concerns the First Amendment retaliation allegations. Yes, Your Honor. There is nothing in the original complaint with respect to the First Amendment claim. There are no allegations. Carter brings all of those allegations in his amended complaint, which was filed in January of 2023. Beyond that, the first time that Carter actually makes any note of Branch's statements is in his amended complaint in his First Amendment litigation. He does not raise those in any of the written complaints about his reentry classification. In August of 2022, he did not raise retaliation at that point. The next point that we would note is, importantly, every single circuit to address this issue has taken the approach that Carter asked this court to take today. An approach that appears was first adopted by the Ninth Circuit, the very same circuit that decided Sadazai and said, whether it is a prisoner's status as a prisoner or the supplemented fact of his exhaustion, it does not matter. That was the first circuit to adopt this approach. They adopted it in Rhodes v. Robinson, and the Supreme Court cited Rhodes v. Robinson in 2022 with approval on that point. The reason for such broad approval is, as Judge Harris noted, this approach makes sense. While requiring a plaintiff to institute a new lawsuit for every single related claim that arises in the course of litigation does not make any sense. It is inconsistent with the federal rules, it is inconsistent with the PLRA, and it is inconsistent with the precedent of this court. The next point we would like to make is specifically with respect to Hardin v. Hunt. That case is entirely distinguishable based on the fact that the supplemented fact there was new defendants rather than new claims. For that reason, Carter contends that Rule 15 does apply to his case. All right, I see time's up. Thank you. I want to thank you and your colleague, Ms. Stuckey, for your arguments. You have been well-prepared here before the court, and you have not embarrassed yourself in any way, and so I hope we see you in the future again arguing cases. Thank you very much for your service. We'll come down to Greek Council. We'll come down to Greek Council and then proceed to the last case.
judges: Paul V. Niemeyer, Pamela A. Harris, Nicole G. Berner